**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Meng Meng LIN

             Plaintiff,                    **JURY TRIAL DEMANDED**

v.

                              Civil Action No. 16-2270

CITY OF NEW YORK,
COMMISSIONER WILLIAM BRATTON, New
York City Police Department,
FORMER DEPUTY INSPECTOR RONALD LEYSON,
New York City Police Department, 110th Precinct,
PO BRIAN LEGUERNIC, New York City Police
Department,110th Precinct,
PO SURRIGA, New York City Police
Department, 110th Precinct,
PO JOHN DOE, New York City Police
Department, 110th Precinct, "JOHN DOE" being
a fictitious name, the true name is not
known at this time,

             Defendants.

---

## VERIFIED COMPLAINT

Plaintiff Meng Meng LIN ("Mr. Lin"), through undersigned counsel, upon information and belief, alleges as follows:

### INTRODUCTION

1. This is a civil rights action brought by Plaintiff Meng Meng Lin for relief owing to Mr. Lin and arising from Defendants' tortious acts and violations of Mr. Lin's constitutional and statutory rights. In particular, Mr. Lin was subjected to excessive force in the course of an arrest, in violation of his Fourth Amendment rights.

2. Among other acts, Defendants Leguernic and Surriga arrested Mr. Lin and applied unreasonable and unnecessary force to effect the arrest. The force applied on Mr. Lin results in injuries to Mr. Lin's

1

chest and torso.

3.  Mr. Lin seeks compensatory and punitive damages, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

4.  The U.S. District Court has jurisdiction over this action under 28 U.S.C. § 1331. The claims in this action arise out of 42 U.S.C. § 1983 and the Constitution of the United States.

5.  This Court also has supplemental jurisdiction over the state constitutional and state law claims under 28 U.S.C. § 1367.

6.  Venue is proper under 28 U.S.C. § 1391(e) because the Mr. Lin resides in this district and no real property is involved in this action.

## PARTIES

7.  MENG MENG LIN, Plaintiff herein, is a resident of Elmhurst, Queens. He is a 56 year-old Chinese native, who immigrated to this country in 1993.

8.  CITY OF NEW YORK, Defendant herein, is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the New York City Police Department ("NYPD") as a constituent department or agency in the area of law enforcement. At all relevant times herein described, Defendant hired, employed, supervised and controlled the individual Defendants William Bratton, Ronald Leyson, Brian Leguernic, PO [FNU] Surriga, and PO John Doe.

9.  WILLIAM BRATTON, Defendant herein, is the Commissioner of the NYPD, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts

2

alleged herein. At all relevant times herein described, Defendant is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD, a municipal agency of the City of New York. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

10. DEPUTY INSPECTOR RONALD LEYSON, Defendant herein, was formerly the Commanding Officer of the NYPD's 110th Precinct, and he is sued herein in his individual and official capacities. At all relevant times herein described, Defendant was an employee of the State of New York and the NYPD. He was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

11. BRIAN LEGUERNIC, Defendant herein, is a Police Officer with the NYPD's 110th Precinct, and he is sued herein in her individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and the NYPD.

12. PO [FNU] SURRIGA, Defendant herein, is a Police Officer with the NYPD's 110th Precinct, and he is sued herein in her individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and the NYPD.

13. PO JOHN DOE, Defendant herein, is an Asian male Police Officer with the NYPD's 110th Precinct, and he is sued herein in her individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and the NYPD.

## FACTS

14. On or about September 24, 2013, at around 7 PM, Mr. Lin and several friends were congregated in Elmhurst Park in Queens, conversing with each other and playing card games.

3

15. As Mr. Lin was about to leave his group to go home, Defendants Leguernic, Surriga, and Doe ("Defendant POs") approached him. He was still in the vicinity of the tables and benches where he and his friends were playing cards, and did not notice the Defendant POs prior to their approach. There was no cash on any of the park tables, as alleged by Defendant POs in the criminal complaint.

16. Mr. Lin, who does not speak nor understand English, did not say anything when the Defendant POs started approaching. Defendant POs were speaking in English to Mr. Lin; Defendant Doe, who appeared Asian, did not speak Mandarin. Because he felt intimidated by the Defendant POs, he started to slowly walk away from them.

17. At no point prior to this did Mr. Lin understand whether orders were being issued to him by Defendants, or at all understand what the Defendants were saying to him.

18. Mr. Lin did not intentionally act in a manner so as to be noncompliant with any Defendant POs' orders or commands.

19. As he was walking away either one of Defendants Leguernic or Surriga suddenly grabbed his arm, pushed him down on a park bench, and punched him in the face. He landed on the left side of his torso.

20. Defendant Doe followed and punched Mr. Lin around the left side of his torso and then proceeded to hit him on his right side.

21. Mr. Lin attempted to assume a fetal position to minimize his body and protect himself from Defendants, who continued punching him. Mr. Lin was punched and kicked in his chest and back areas.

22. Defendants wrestled to grab his arms and lift him up in order to handcuff him. Defendants placed Mr. Lin's arm behind him and handcuffed him.

23. After he was handcuffed, Defendants continued to punch Mr. Lin about his torso. As he was being handcuffed and simultaneously beaten, Mr. Lin fell on a nearby bench and hurt his knee, causing swelling and bruising.

4

24. At no point did Mr. Lin run away from Defendant POs, nor did he fight back to defend himself during the attack.

25. Mr. Lin did not have, and did not appear to have any weapons or dangerous instruments on his person. Defendants did not conduct a search of Mr. Lin prior to or after placing him in handcuffs.

26. Mr. Lin was tearful and in pain, and could hardly walk. Defendant POs had to drag him to their vehicle to take him to the precinct.

27. From the time he was initially grabbed and pushed to the time he was taken away to the precinct, Mr. Lin was beaten continuously by the Defendants for about twenty minutes.

28. Defendants took Mr. Lin to the 110th Precinct, and arrived there around 8 PM. Mr. Lin was processed and fingerprinted, but no photographs were taken of his injuries.

29. At the precinct, Mr. Lin was placed in a small holding room, where he cried and complained about his pain and asked for help. Police officers in the precinct heard these pleas, but Mr. Lin's cries for help were ignored for hours, until he was finally taken to Elmhurst Hospital at around 2 AM.

30. Mr. Lin saw a doctor when he was admitted to the hospital. Mr. Lin sustained bruises and contusions in his torso. X-rays were taken of his injuries, he was placed on an IV drip, and he was given painkillers.

31. His presenting injuries necessitated a CT scan of his chest, abdomen and pelvis. Mr. Lin was diagnosed with a rib injury and a traumatic chest wall injury that were caused by the Defendants' application of force upon him. Mr. Lin was advised to make a follow up visit and was prescribed medication for his injuries.

32. Mr. Lin's limited income has made it burdensome for him to seek follow up visits and aftercare for his injuries as recommended by his doctor. Mr. Lin's injuries have prevented him from performing his job and doing typical daily activities. Because the injuries from the attack were to his midsection, Mr. Lin feels pain even when he breathes.

33. Prior to this encounter, Mr. Lin has never had a criminal record. He has never been arrested, and has been a law-abiding citizen.

34. For 2014, the amount paid out for claims against the NYPD reached $216.9 million. This was 16 percent ($30.6 million) higher than the previous highest annual payout for Police claims (FY 2011). The number of tort claims filed annually against the NYPD continued to grow and reached a historical high of 9,448 claims in 2014. The NYPD has seen the number of claims rise 73 percent over the last ten years.

35. The above demonstrates that it was the policy and/or custom of Defendants City and Bratton to inadequately and improperly investigate and rectify citizen complaints of police misconduct, and acts of misconduct were instead tolerated by Defendants City and Bratton. It also demonstrates the Defendant City and Bratton's lack of or failure to implement appropriate policy responses to repeated complaints of such violations.

## EXHAUSTION OF REMEDIES

36. As to the state law claims, on September 26, 2013, Mr. Lin filed a Notice of Claim with the City of New York, alleging various constitutional violations by the New York City Police Department. This claim was timely filed, within ninety (90) days from when the claims arose.

37. As to the federal claims, exhaustion of state remedies is not a prerequisite to filing a § 1983 action. As there are no federal defendants, nor any federal claims aside from those arising under § 1983, Mr. Lin was not required to exhaust remedies.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Excessive Force

6

38. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 37 as if fully set forth herein.

39. Defendants arrested Mr. Lin initially for Loitering, a violation under New York Penal Law.

40. Defendants Leguernic, Surriga and Doe were present at the scene of the arrest, and conducted the arrest of Mr. Lin.

41. Defendants Leguernic, Surriga and Doe punched Mr. Lin several times ostensibly to subdue him in the course of the arrest.

42. Defendants Leguernic, Surriga and Doe's acts caused physical injuries and pain to Mr. Lin, including bruising and contusions to his midsection.

43.  Mr. Lin's injuries were sufficiently serious to warrant medical attention. Mr. Lin was admitted to Elmhurst Hospital because of injuries caused by Defendants.

44. At the time of the arrest, Mr. Lin was alone and unarmed. During the course of the arrest, Mr. Lin did not resist arrest, nor was he fleeing or attempting to flee. Mr. Lin cooperated with Defendants even though he did not understand English.

45. As a direct and proximate result of Defendants' actions, Mr. Lin sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

46. Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Lin to an award of punitive damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Deliberate Indifference to Medical Needs

47. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 46 as if fully set forth herein.

48. Defendants were present at the scene of the arrest, and conducted the arrest of Mr. Lin.

49. Defendants Leguernic, Surriga and Doe punched Mr. Lin several times in the course of the arrest.

50. Defendants Leguernic, Surriga and Doe were aware that their application of force caused pain to Mr. Lin, as Mr. Lin expressed pain verbally and physically, during the course of the arrest and while he was in Defendants' custody.

51. Defendants deliberately ignored Mr. Lin's injuries and did not attempt to seek medical attention for the same, during the course of the arrest and while he was in Defendants' custody.

52. Defendants deliberately did not take note of Mr. Lin's injuries in their notes and reports.

53. Defendants deliberately did not take photographs of Mr. Lin's injuries.

54. Defendants waited until 2 AM the day after the arrest before taking Mr. Lin to Elmhurst Hospital for injuries they caused.

55. As a direct and proximate result of Defendants' actions, Mr. Lin sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

56. Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Lin to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Municipal Liability Claim for Negligent Training, Hiring, Supervision and Retention

57. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. Defendants City, Bratton, and Leyson knew or reasonably should have known to a moral certainty that the officers within their supervision and control will confront, *inter alia*, situations where officers have to effect arrests in a manner that does not require the use of force; arrestees that are non-native English speakers; and arrestees that need medical attention.

8

59. Defendants City, Bratton, and Leyson have devised, implemented, enforced, adopted, sanctioned and ratified policies, practices and customs as to, *inter alia*, conducting an arrest; the collection of testimonial and physical evidence at a crime scene; the treatment of arrestees in need of medical attention; communication with arrestees who do not speak English; and the requirements for the use of force in the course of an arrest.

60. The crime scene confronted by Defendants Leguernic, Surriga and Doe presented them with choices of the sort that training and supervision by Defendants City, Bratton, and Leyson would have made less difficult, and the wrong choices, the sort of which Defendants Leguernic, Surriga and Doe made in this case, will frequently cause the deprivation of a person's constitutional rights.

61. The New York City Police Department has a history of mishandling arrests, evidence processing, and treatment of arrestees and detainees.

62. Defendants City, Bratton, and Leyson failed to properly train officers within their supervision and control as to, *inter alia*, conducting an arrest; the use or non-use of excessive force; and the treatment of arrestees in need of medical attention; in a manner that preserves rights protected by the Constitution.

63. With deliberate indifference to Mr. Lin's constitutional rights, Defendants City, Bratton, and Leyson have directly and proximately caused Mr. Lin's deprivation of rights under the US Constitution by devising, implementing, enforcing, adopting, sanctioning and ratifying a policy, practice and/or custom of (a) failing to properly screen, train, and supervise NYPD officers; (b) failing to adequately monitor and discipline the NYPD and its officers; and (c) encouraging, sanctioning and failing to rectify the NYPD's constitutional abuses.

64. The actions of Defendants City, Bratton, and Leyson, directly and proximately caused Defendants Leguernic, Surriga and Doe to, *inter alia*, apply excessive force on Mr. Lin and not attend to his medical needs.

9

65. As a direct and proximate result of Defendants City, Bratton, and Leyson's actions, Mr. Lin was deprived of his Fourth and Fourteenth Amendment rights under the US Constitution.

66. As a direct and proximate result of Defendants City, Bratton, and Leyson's actions, Mr. Lin has sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

67. Defendants City, Bratton, and Leyson's acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Lin to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF
### Respondeat Superior Claim Against the City Under New York Common Law

68. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69. The actions of Defendants Leyson, Leguernic, Surriga and Doe occurred while they were on duty as New York City police officers, and as employees of Defendants City and Bratton. As a result, Defendants City and Bratton are liable to Mr. Lin under the doctrine of respondeat superior.

### FIFTH CLAIM FOR RELIEF
### New York State Law Assault and Battery

70. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 69 as if fully set forth herein.

71. Defendants Leguernic, Surriga and Doe intentionally placed Mr. Lin in imminent apprehension of harmful contact by accosting Mr. Lin, verbally attacking Mr. Lin, and asserting their authority as police officers.

72. Defendants communicated to Mr. Lin, in English and with body language, that they could and would cause offensive bodily contact against him.

10

73. Defendants' actions caused Mr. Lin to be fearful and apprehensive of imminent bodily harm.

74. Defendants Leguernic, Surriga and Doe intentionally punched and elbowed Mr. Lin about the chest and torso, and pushed him to the ground.

75. Defendants Leguernic, Surriga and Doe's actions caused Mr. Lin to suffer from, *inter alia*, bruises and bodily trauma.


### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Deprivation of Right to Petition Government

76. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 75 as if fully set forth herein.

77. Despite its adoption of language access policies, and despite being notified by the US Department of Justice of deficiencies in its policies and practices, Defendants have continued to routinely deny limited English proficiency individuals access to police protection and to the broader legal system.

78. Defendants failed to provide language services, and actively mock and humiliate limited English proficiency (LEP) individuals who request such services, and retaliate against them for making such requests.

79. Defendants, through their policy, custom or practice of denying language services to limited English proficient individuals, prevented Mr. Lin from communicating with police officers who were wrongfully arresting him and applying excessive force on him.

80. Defendants acted under color of state law to deprive Mr. Lin of his First Amendment right to petition the government for the redress of grievances. A cause of action is created by 42 U.S.C. § 1983.

81. At the time of the arrest, Defendants knew that Mr. Lin had limited English proficiency.

82. At no point from the initial encounter until he was released from NYPD custody did Defendants provide language services to Mr. Lin.

83. Defendants' actions prevented Mr. Lin to fully communicate with Defendants, in order to pre-

11

serve his constitutional rights and seek redress for his grievances.

84. As a direct and proximate result of Defendants' actions, Mr. Lin sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

85. Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Lin to an award of punitive damages.

### SEVENTH CLAIM FOR RELIEF
### Deprivation of Right to Petition Government for Redress of Grievances under Article I Section 9 of the New York State Constitution

86. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 85 as if fully set forth herein.

87. Defendants, through their policy, custom or practice of denying language services to limited English proficient individuals, prevented Mr. Lin from communicating with police officers who were wrongfully arresting him and applying excessive force on him.

88. As a direct and proximate result of Defendant's actions, Mr. Lin sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

89. Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Lin to an award of punitive damages.

### EIGHTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

90. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 89 as if fully set forth herein.

91. Defendant police officers beat up an innocent, unarmed, non-English speaking arrestee in a pub-

lic park. Such conduct is so outrageous in character, and so extreme in degree, as to go beyond all possi-

ble bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

92. Defendants' conduct was intended to cause Mr. Lin severe emotional distress.

93. As a direct and proximate result of Defendants actions, Mr. Lin sustained severe emotional dis-

tress, aside from monetary damages and physical pain and suffering, in an amount to be determined at

trial.

94. Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to

an award of punitive damages.

## NINTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

95. Mr. Lin incorporates by reference the allegations set forth in Paragraphs 1 through 94 as if fully

set forth herein.

96. Defendants owed a duty to not harm Mr. Lin, as an arrestee in their custody.

97. Defendants beat up an innocent, unarmed, non-English speaking arrestee in a public park. Such

conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

98. Defendants' acts breached their duty to protect Mr. Lin.

99. As a direct and proximate result of Defendants actions, Mr. Lin sustained severe emotional dis-

tress, aside from monetary damages and physical pain and suffering, in an amount to be determined at

trial.

100.      Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling

Mr. Li to an award of punitive damages.

13

WHEREFORE, Mr. Lin respectfully requests a Final Judgment:

a. Awarding Mr. Lin compensatory damages in amounts that are fair, just and reasonable, to be determined at trial.

b. Awarding Mr. Lin punitive damages and such other and further relief as this Court deems just, proper and equitable.

c. Awarding Mr. Lin reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d. Awarding Mr. Lin costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

e. Awarding Mr. Lin such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: May 6, 2016
Flushing, NY

Respectfully submitted,

Victor Manibo, Esq.
WANG LAW OFFICE, PLLC
36-25 Main Street, 3rd Floor
Flushing, NY 11354
(718) 353-9264
(718) 353-2099 - facsimile
*Attorneys for Plaintiff*

14

## VERIFICATION

I, Meng Meng Lin, declare:

1. I do not speak, read or write English fluently. I do fluently speak, read and write Chinese. This verification and complaint has been interpreted and translated for me from Chinese by the below translator.

2. I have personal knowledge of the above facts and am competent to testify regarding all such facts based upon my personal knowledge.

3. I am the Plaintiff in the above action.

4. The foregoing complaint is true and correct, except as to matters stated on information and/or belief and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true.

_LIN MENG MENG_
Meng Meng Lin

---

## Certificate of Translation

I, Chiu Mei Feng, am competent to translate from Chinese into English, and certify that the translation is true and accurate to the best of my abilities.

15